IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BOBBY P. KEARNEY, MD, PLLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16-cv-191 |
| | ) | |
| BLUE CROSS AND BLUE SHIELD OF | ) | |
| NORTH CAROLINA, an Independent | ) | |
| Licensee of the Blue Cross Blue Shield | ) | |
| Association, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Bobby P. Kearney, MD, PLLC ("Plaintiff") initiated this action in state court against Blue Cross and Blue Shield of North Carolina ("BCBSNC" or "Defendant"), alleging various violations of North Carolina law and seeking declaratory and injunctive relief. Defendant removed the action to this Court, on the basis of federal question jurisdiction. Before the Court is Plaintiff's Motion for Preliminary Mandatory Injunction (ECF No. 11) and Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 15). For the reasons that follow, the Court grants in part and denies in part Defendant's motion to dismiss and denies as moot Plaintiff's motion for preliminary injunction.

## I. BACKGROUND[1]

Plaintiff is a medical practice located in Iredell County, North Carolina, devoted solely and exclusively to treating patients with substance abuse and drug addiction issues. (ECF No. 6 at 1, 3.) BCBSNC is an administrator of health plans. (ECF No. 16 at 1; ECF No. 6 at 3.) In 2011, Plaintiff and BCBSNC entered into a Network Participation Agreement ("Provider Agreement"), under which Plaintiff "agree[d] to render Medically Necessary Covered Services" to BCBSNC insureds. (ECF No. 16-1 § 2.1.1.)

In February 2016, Plaintiff filed this action, alleging that BCBSNC improperly denied claims submitted for payment by Plaintiff and failed to pay Plaintiff for certain "medically necessary" services Plaintiff provided to persons insured by BCBSNC. (ECF No. 6 at 2, 9–10.) The Complaint alleges five causes of action:[2] (1) "Breach of Contract Suit for Monetary Damages"; (2) "Claim for Interest Under N.C. Gen. Stat. § 58-3-225(e)"; (3) "Duty to Inform Third Parties"; (4) "Duty of Defendant to comply with N.C. Gen. Stat. § 58-3-225"; and (5) "Mandatory Injunction." (ECF No. 6 at 12–14; ECF No. 8 at 3.)

On March 10, 2016, Defendant removed the action to this Court, contending that federal question jurisdiction was present because "one or more of Plaintiff's claims are

---

[1] When considering a motion to dismiss, the court accepts as true all well-pleaded allegations in the complaint and views the complaint and any properly attached exhibits to it and the motion to dismiss in the light most favorable to the plaintiff. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).

[2] The original Complaint filed on February 5, 2016 alleges four causes of action. (ECF No. 6 at 12–14.) In addition, Plaintiff asserted a fifth cause of action in a pleading filed as an "Amendment to Complaint" on March 8, 2016. (ECF No. 8 at 3.) The Court will reference both documents collectively as the "Complaint."

2

completely preempted by the Employee Retirement Income Security Act of 1974 ('ERISA')." (ECF No. 1 ¶ 8.) Following removal, on March 25, 2016, Plaintiff filed a motion for preliminary injunction, seeking a mandatory injunction to compel BCBSNC to make payment to Plaintiff for "medically necessary" services rendered by Plaintiff to Defendant's insureds.[3] (ECF No. 11 at 1.) Defendant then, on April 11, 2016, moved to dismiss all five claims in whole or in part under Rule 12(b)(6). (ECF No. 15; ECF No. 16 at 4.)

## II. SUBJECT MATTER JURISDICTION AND ERISA PREEMPTION

Plaintiff, in its Complaint, asserts only state law claims, and thus this Court must assess, as a threshold matter, its subject matter jurisdiction.[4] In general, an action filed in state court may be removed to federal court "only 'if it might have been brought in [federal court] originally.'" *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 370 (4th Cir. 2003) (alteration in original) (quoting *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 186 (4th Cir. 2002)). Here, the case was removed to this Court on the basis that the Court has federal question jurisdiction under ERISA. (ECF No. 1 ¶¶ 8–10.) Federal jurisdiction would therefore depend on whether one or more of Plaintiff's claims are completely preempted by

---

[3] In its brief in support of its motion for preliminary injunction, Plaintiff stated that the question before the Court was: "[W]hether the Court should order Defendant to pay Plaintiff for medical services provided to Defendant's insureds until the earlier of a decision on the merits or until Plaintiff ceases to be a provider under contract with Defendant." (ECF No. 12 at 1.) The case was submitted to this Court on May 10, 2016 for disposition on the parties' motions. The Provider Agreement was terminated on June 2, 2016. (ECF No. 14 at 4; ECF No. 12 at 5.) Thus, based on Plaintiff's briefing, Plaintiff's motion for preliminary injunction became moot on June 2, 2016, less than three weeks after it was submitted to this Court.

[4] The court has an independent obligation to assess whether it has subject matter jurisdiction, irrespective of whether it is raised by the parties. *Wye Oak Tech., Inc. v. Republic of Iraq*, 666 F.3d 205, 218 (4th Cir. 2011).

3

ERISA. *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1138 (10th Cir. 2014) ("Although we have concluded that most of [plaintiff's] claims are not preempted, federal jurisdiction over any one claim is sufficient to support removal."). If none of Plaintiff's claims is completely preempted, then there is no subject matter jurisdiction, and this Court must remand the matter to state court. *See Marks v. Watters*, 322 F.3d 316, 323 (4th Cir. 2003). Further, Defendant contends that Plaintiff's claims are subject to dismissal on grounds that they are preempted by ERISA. (ECF No. 16 at 4–5.) Because this matter presents issues involving ERISA preemption that are so intertwined with this Court's subject matter jurisdiction and Defendant's motion to dismiss, the Court starts with a review of ERISA.

### A. ERISA Overview

"The United States Constitution gives Congress the power to preempt state law." *America's Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1329 (11th Cir. 2014). "Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (alteration in original) (quoting 29 U.S.C. § 1001(b)). The United States Supreme Court explained that "[t]he purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Id.* For this reason, "ERISA includes expansive pre-emption provisions, which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Id.* (citation and quotation omitted). Courts recognize two types of ERISA preemption: complete preemption

4

under § 502(a), 29 U.S.C. § 1132(a), and conflict preemption under § 514, 29 U.S.C. § 1144(a). *See, e.g., Sonoco*, 338 F.3d at 370–71; *Darcangelo*, 292 F.3d at 186–87.

1. *Complete Preemption*

Complete preemption is a jurisdictional doctrine that transforms a claim into one arising under federal law "even if pleaded in terms of state law." *Aetna*, 542 U.S. at 208; *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 65, 67 (1987). The claim then can be brought originally in, or removed to, federal court. *King v. Marriott Int'l, Inc.*, 337 F.3d 421, 425 (4th Cir. 2003). To determine whether a claim has such preemptive force, courts analyze whether the claim falls within the scope of ERISA's civil enforcement scheme, § 502(a), which provides the exclusive remedies for plans governed by ERISA. *Aetna*, 542 U.S. at 208–09. "A claim falls within the scope of § 502 when a 'plan participant or beneficiary' brings suit 'to, among other things, recover benefits, enforce rights conferred by an ERISA plan, remedy breaches of fiduciary duty, clarify rights to benefits, and enjoin violations of ERISA.'" *Rollins v. Kjellstrom & Lee, Inc.*, 109 F. Supp. 3d 869, 878 (E.D. Va. 2015) (quoting *Marks*, 322 F.3d at 323). The Fourth Circuit has made clear that when a state law claim is completely preempted under § 502(a) and has been removed to federal court, dismissal of the claim is inappropriate. *See Darcangelo*, 292 F.3d at 195 ("[W]hen a claim under state law is completely preempted and is removed to federal court because it falls within the scope of § 502, the federal court should not dismiss the claim as preempted, but should treat it as a federal claim under § 502."). Rather, the court "may choose to grant plaintiff leave to amend her complaint in order to clarify the exact scope of relief requested under § 502(a)." *Singh v. Prudential Health Care Plan, Inc.*, 335 F.3d 278, 292 (4th Cir. 2003).

5

*2. Conflict Preemption*

Under conflict preemption, "state laws that conflict with federal laws are preempted, and preemption is asserted as 'a federal defense to the plaintiff's suit.'" *Darcangelo*, 292 F.3d at 186–87 (quoting *Taylor*, 481 U.S. at 63). Conflict preemption, however, does not authorize removal to federal court. *Id.* at 187. State laws are superseded under ERISA § 514 if they "relate to" an ERISA plan. *Id.* (quoting 29 U.S.C. § 1144(a)). According to the Supreme Court, a state law "'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983). "'State law' includes all laws, decisions, rules, regulations or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c); *see Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 258 (4th Cir. 2005). Further, "[t]he Supreme Court has repeatedly emphasized that ERISA's preemptive scope is not limited to 'state laws specifically designed to affect employee benefit plans.'" *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 341 (4th Cir. 2007) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48 (1987)). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna*, 542 U.S. at 209. Unlike complete preemption, a state law claim that is conflict preempted under § 514 must be dismissed. *See Marks*, 322 F.3d at 323.

*3. Existence of an ERISA Plan*

A threshold question that must be resolved before a determination that ERISA preemption applies in a given case is whether the case involves an "employee benefit plan" as

6

defined by ERISA. *House v. Am. United Life Ins. Co.*, 499 F.3d 443, 448 (5th Cir. 2007); *see also Searls v. Sandia Corp.*, 50 F. Supp. 3d 737, 743 n.5 (E.D. Va. 2014). Plaintiff's Complaint does not identify a specific benefit plan governed by ERISA. Defendant contends, and Plaintiff does not dispute, that it is "'overwhelmingly likely' that some of BCBSNC's Members are participants in ERISA-governed plans." (ECF No. 16 at 8 n.4 (quotation omitted).) In addition, Defendant, as part of its Notice of Removal, submitted evidence that at least some of Plaintiff's patients for whom Plaintiff is seeking payment are covered by ERISA plans. (*See* ECF No. 2 ¶¶ 4–5 (stating that at least 115 members for which Plaintiff submitted claims were covered by 32 group health benefits plans governed by ERISA).) The Court concludes that there is sufficient evidence to satisfy this threshold prerequisite that this action involves a health care plan governed by ERISA.

### B. Plaintiff's Breach of Contract Claim is Completely Preempted

As earlier stated, at least one of Plaintiff's claims must be completely preempted by ERISA for this Court to have subject matter jurisdiction. Plaintiff alleges in its first claim that BCBSNC owes it for "medically necessary" services provided to BCBSNC members. (*See* ECF No. 6 at 2, 12.) Defendant argues, among other things, that Plaintiff's claim should be dismissed as conflict preempted, contending that a determination of whether Plaintiff is entitled to payment involves interpretation of the ERISA plans. (*See* ECF No. 16 at 5 & n.3.) The Court agrees with Defendant that the claim may be conflict preempted; however, dismissal would be improper because the Court concludes that the claim is also completely preempted and, thus, affords a basis for the exercise of federal jurisdiction in this case. *See Darcangelo*, 292 F.3d at 195 (holding that, while an action to enforce the terms of an ERISA

7

plan necessarily "relates to" an ERISA plan and is conflict preempted by § 514, such an action is also completely preempted § 502 and gives rise to federal jurisdiction).

For a claim to be completely preempted by ERISA, it must fall within the ambit of § 502(a)'s civil enforcement provision. This provision provides, in relevant part:

> (a) Persons empowered to bring a civil action
> A civil action may be brought—
> (1) by a participant or beneficiary—
> (A) for the relief provided for in subsection (c) of this section, or
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]

29 U.S.C. § 1132(a). In interpreting § 502(a), the Fourth Circuit has outlined a three-prong test for complete preemption: "(1) the plaintiff must have standing under § 502(a) to pursue its claim"; (2) the claim must come within the scope of an ERISA provision that can be enforced via § 502(a); and "(3) the claim must not be capable of resolution 'without an interpretation of the contract governed by federal law,' i.e., an ERISA-governed employee benefit plan."[5] *Prince v. Sears Holdings Corp.*, --- F.3d ----, 2017 WL 383370, at *2 (4th Cir. 2017) (quoting *Sonoco*, 338 F.3d at 372).

---

[5] Some circuits have identified the Supreme Court's complete preemption test in *Aetna*, which was decided in 2004, as a two-part test: (1) whether the individual asserting the claim could have at some point brought the claim under § 502(a)(1)(B); and (2) whether there is no other independent legal duty that is implicated by the defendant's actions. *See, e.g.*, *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 328 (2d Cir. 2011); *Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1301 (11th Cir. 2010). However, the Fourth Circuit has continued to adhere to the three-part test after *Aetna*. *Prince*, 2017 WL 383370, at *2; *Deem v. BB&T Corp.*, 279 F. App'x 283, 284 (4th Cir. 2008) (per curiam); *see also Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc.*, 902 F. Supp. 2d 771, 779 n.22 (D. Md. 2012).

8

Here, analysis of the factors leads the Court to conclude that Plaintiff's breach of contract claim is really one for benefits under § 502(a) and is thus completely preempted to the extent it seeks benefits under plans governed by ERISA. As to the first factor, whether Plaintiff has statutory standing, "[h]ealthcare providers . . . are generally not 'participants' or 'beneficiaries' under ERISA and thus lack independent standing to sue under ERISA." *Gables Ins. Recovery, Inc. v. Blue Cross & Blue Shield of Fla., Inc.*, 813 F.3d 1333, 1338 (11th Cir. 2015) (quotation omitted), *cert. denied*, 137 S. Ct. 296 (2016). However, most courts recognize an exception to this general rule: a provider may acquire derivative standing to sue under ERISA if the provider secures a written assignment from a "participant" or "beneficiary" of that individual's right to payment of medical benefits. *Id.* at 1339; *Nat'l Ctrs. for Facial Paralysis, Inc., v. Wal-Mart Claims Admin. Grp. Health Plan*, 247 F. Supp. 2d 755, 758–59 (D. Md. 2003); *see also Brown v. Sikora & Assocs., Inc.*, 311 F. App'x 568, 570 (4th Cir. 2008) (noting that, "[a]lthough we have never addressed the question of derivative standing for ERISA benefits, our sister circuits have consistently recognized such standing when based on the valid assignment of ERISA health and welfare benefits by participants and beneficiaries" and that "extending derivative standing to health care providers serves to further the explicit purpose of ERISA").

In this case, Defendant provided in support of its Notice of Removal several claim forms Plaintiff submitted to BCBSNC, which contain purported assignments of participants' rights under their plans to Plaintiff. (*See* ECF No. 2-1.) Plaintiff also alleged in the Complaint that it has submitted claims on behalf of patients for over eight years and "had experienced no problem with the payment of its claims" (ECF No. 6 at 5). *See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1351, 1353 (11th Cir. 2009) (holding that, while

9

Anthem did not "link any particular assignment to a particular ERISA plan," the claim forms submitted which noted assignment of rights were representative of assignments for services rendered and thus sufficient). At this stage, the Court concludes that the record plausibly demonstrates that Plaintiff has derivative statutory standing as the assignee of plan participants or beneficiaries to sue for unpaid benefits under ERISA.

Second, the Court must determine whether Plaintiff's breach of contract claim falls within § 502(a)'s scope. A claim falls within the scope of § 502(a) if it seeks, among other things, the recovery of benefits under an ERISA plan. *Marks*, 322 F.3d at 323. In determining whether a claim falls within a provider's derivative standing under § 502(a), courts distinguish between a "rate of payment" claim and one of "right to payment." *See Brown v. Blue Cross Blue Shield of Tenn., Inc.*, 827 F.3d 543, 548 (6th Cir. 2016). A claim implicates "rate of payment" if the dispute is over the amount or level of payment under a provider agreement. *Id.*; *see also Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 530–32 (5th Cir. 2009). Such a claim does not fall within § 502(a). *Lone Star*, 579 F.3d at 532. On the other hand, a claim is one for "right to payment" if it "challenge[s] coverage determinations under ERISA plans," such as what is "medically necessary" or a "covered service," and this type of claim falls within § 502(a). *Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1304 (11th Cir. 2010); *Brown*, 827 F.3d at 548.

Plaintiff's breach of contract claim falls squarely within § 502(a). Plaintiff challenges BCBSNC's denial of payment for services it rendered to participants under health care plans issued by BCBSNC. Specifically, Plaintiff argues that BCBSNC denied coverage for the claims based on an erroneous conclusion that the services were not "medically necessary." (*See* ECF

No. 6 at 9–10.) "[Q]uestions of medical necessity," according to Plaintiff, are to be determined by the physician, Dr. Kearney in this case. (ECF No. 20 at 6–7.) Because Plaintiff's breach of contract claim implicates the "right to payment" based on coverage determinations, in that it seeks payment of benefits under ERISA plans, the claim falls within § 502(a). *See Conn. State Dental Ass'n*, 591 F.3d at 1350–51.

The final inquiry is whether Plaintiff's claim is capable of resolution without interpreting the ERISA plans. The Provider Agreement states that Plaintiff will "render Medically Necessary Covered Services to Members according to [BCBSNC's] Policies and Procedures and according to the terms of this Agreement." (ECF No. 16-1 § 2.1.1.) Under the Provider Agreement, in return for the provision of said services, BCBSNC "will pay and [Plaintiff] agree[s] to accept as payment in full for Covered Services delivered to [its] Members." (*Id.* § 4.1.) Determining Plaintiff's entitlement to payment depends on whether Plaintiff rendered a service that is "medically necessary" as defined in the Provider Agreement, and whether the service constitutes a "covered service" under the member plan.[6] (*See id.* §§ 1.16, 1.7.) Thus, Plaintiff's claim cannot be resolved without interpretation of plans that are governed by ERISA. *See Conn. State Dental Ass'n*, 5491 F.3d at 1353.

For all of these reasons, the Court concludes that to the extent Plaintiff's breach of contract claim involves health care plans governed by ERISA, the claim is completely

---

[6] "Medically Necessary" or "Medical Necessity," according to the Provider Agreement, "means those Covered Services" that are provided for, among other things, "the diagnosis, treatment, cure, or relief of a health condition, illness, injury, or disease." (ECF No. 16-1 § 1.16.) "Covered Services" is defined in the Provider Agreement to "mean[] the benefits and services . . . specified in the [Member's] Benefit Plan." (*Id.* § 1.7.)

11

preempted by § 502(a) and arises under federal law. Thus, the claim must be treated as a federal claim under § 502(a). This Court, therefore, has subject matter jurisdiction based on the presence of a federal question.

### III. PLAINTIFF'S REMAINING CLAIMS MUST BE DISMISSED

Having determined that this Court has subject matter jurisdiction, the Court must examine Defendant's motion to dismiss the remaining claims. Defendant's arguments in support of its motion to dismiss these claims are essentially twofold: first, Defendant contends that the claims should be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6); and second, Defendant contends that these claims should be dismissed as preempted. (*See* ECF No. 16 at 8, 14, 18.) Because the Court concludes that the claims must be dismissed without prejudice for failure to state claims for relief, the Court declines to address whether they are subject to dismissal on preemption grounds.

#### A. Rule 12(b)(6) Legal Standard

The purpose of a motion made under Rule 12(b)(6) of the Federal Rules of Civil Procedure "is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint may fail to state a claim upon which relief can be granted in two ways: first, by failing to state a valid legal cause of action, *i.e.*, a cognizable claim, *see Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012); or second, by failing to allege sufficient facts to support a legal cause of action, *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A dismissal under Rule 12(b)(6) is appropriate only when the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Capital Associated Indus., Inc. v. Cooper*, 129 F. Supp. 3d 281, 300

(M.D.N.C. 2015) (quoting *Brown v. Target, Inc.*, No. ELH-14-00950, 2015 WL 2452617, at *9 (D. Md. May 20, 2015)). In other words, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### B. (Counts II and IV) North Carolina Prompt Pay Act Claims

In the second claim of the Complaint, Plaintiff seeks alleged interest at the rate of 18% on all amounts due from Defendant under the North Carolina Prompt Pay Act (the "NCPPA"), N.C. Gen. Stat. § 58-3-225. (ECF No. 6 at 12.) The fourth claim in the Complaint is also brought under the NCPPA and seeks an order directing Defendant to provide specific reasons for its denial of Plaintiff's claims. (*Id.* at 13–14.) Defendant contends, among other things, that the NCPPA does not authorize a private cause of action, and therefore Plaintiff has failed to state a claim for relief. (ECF No. 16 at 8–9.) The Court agrees.

"In North Carolina, '[g]enerally, a statute allows for a private cause of action only where the legislature has expressly provided a private cause of action within the statute.'" *Benjamin v. Sparks*, 173 F. Supp. 3d 272, 291 (E.D.N.C. 2016) (alteration in original) (quoting *Willett v. Chatham Cty. Bd. of Educ.*, 625 S.E.2d 900, 903 (N.C. Ct. App. 2006)). Whether a private cause of action can be implied from a statute depends on legislative intent. *See Lea v. Grier*, 577 S.E.2d 411, 416 (N.C. Ct. App. 2003). The Fourth Circuit has admonished that "[w]ithout clear and specific evidence of legislative intent, the creation of a private right of action by a federal court abrogates both the prerogatives of the political branches and the obvious authority of states to sculpt the content of state law." *Am. Chiropractic Ass'n v. Trigon Healthcare,*

*Inc.*, 367 F.3d 212, 229 (4th Cir. 2004) (quoting *A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 674 (4th Cir. 1986)). Thus, "federal courts should be reluctant to read private rights of action into state laws where state courts and state legislatures have not done so." *Id.*

The NCPPA provides that within 30 days of the submission of a claim by a claimant,[7] an insurer must take certain actions, which can include paying the claim or providing a notice of denial with specific reasons for the denial. N.C. Gen. Stat. § 58-3-225(b), (c). Violation of these prescriptions "subjects the insurer to the sanctions in G.S. 58-2-70." *Id.* § 58-3-225(j). Section 58-2-70 only grants the Commissioner of Insurance enforcement authority to remedy violations of the NCPPA.[8] In particular, the Act specifically outlines the remedial actions the Commissioner of Insurance may pursue, which include commencing administrative proceedings or filing an action in Superior Court of Wake County. *See id.* § 58-2-70(b)–(c), (e), (h). That the Act specifically provides detailed enforcement procedures for the Commissioner of Insurance, and no such provisions for claimants, strongly suggests that the North Carolina

---

[7] The NCPPA defines "claimant" to include "a health care provider or facility that is responsible or permitted under contract with the insurer or by valid assignment of benefits for directly making the claim with an insurer." N.C. Gen. Stat. § 58-3-225(a)(1).

[8] *See* N.C. Gen. Stat. § 58-2-70(b) ("Whenever the Commissioner has reason to believe that any person has violated any of the provisions of this Chapter . . . the Commissioner may . . . proceed under the appropriate subsections of this section."); *id.* § 58-2-70(c) ("If . . . the Commissioner finds a violation of this Chapter, the Commissioner may . . . order the payment of a monetary penalty . . . or petition the Superior Court of Wake County . . . ."); *id.* § 58-2-70(e) ("Upon petition of the Commissioner the court may order the person who committed a violation . . . to make restitution in an amount that would make whole any person harmed by the violation.").

14

General Assembly did not intend to create a private right of action.[9] *See Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979) (explaining that "where a statute expressly provides a particular remedy or remedies," the court must be cautious of "reading others into it"); *cf. Nw. Airlines, Inc. v. Transp. Workers Union*, 451 U.S. 77, 97 (1981) ("The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.").

Further, neither party has cited any cases where a court considered a claim under the NCPPA. Nor has this Court found such a case. In addition, of the jurisdictions that permit a private right of action under their version of the prompt pay act, such action is either expressly or implicitly authorized by statute. *See, e.g.,* Tex. Ins. Code Ann. §§ 1301.101, 1301.108; Ala. Code § 27-1-19(a); Miss. Code Ann. § 83-9-5 (h)(4), (k); Va. Code Ann. § 38.2-3407.15(E); Nev. Rev. Stat. Ann. § 689A.410(5); *see also In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1299–1300 & n.22 (S.D. Fla. 2003) (dismissing claims brought under the prompt pay statutes of 22 states because the statutes did not provide for a private right of action).

---

[9] North Carolina courts have held that violations of other sections of Chapter 58 do not give rise to a private right of action but can only be remedied by action of the Commissioner of Insurance. *See, e.g., Cobb v. Pa. Life Ins. Co.*, 715 S.E.2d 541, 552 (N.C. Ct. App. 2011).

The Court concludes that Plaintiff has failed to allege a cognizable claim under the NCPPA. Accordingly, Plaintiff's second and fourth claims must be dismissed.[10]

### C. (Count III) Duty to Inform

Plaintiff, in its third claim, alleges that Defendant, under its contract with Plaintiff, "is obligated to inform Plaintiff of Defendant's members who are entitled to health care benefits under BCBSNC's health insurance policies, and to allow Plaintiff to provide medically necessary drug addiction services to those members." (ECF No. 6 at 13.) Plaintiff therefore contends that it is entitled to an "Order from the Court instructing Defendant to inform its members whether they are entitled to payment for drug addiction services rendered by Plaintiff." (*Id.*) Defendant seeks dismissal, contending, among other things, that the Provider Agreement does not impose such an obligation on Defendant. (ECF No. 16 at 16.) The Court agrees that this claim must be dismissed.

---

[10] As an alternative argument, Plaintiff appears to assert that the Provider Agreement between it and BCBSNC incorporates the NCPPA's 18% interest provision. (ECF No. 20 at 13.) Specifically, Plaintiff contends that Defendant, in the Provider Agreement "represented that 'we have established billing, claim submission, and claim processing procedures to comply with the provisions of N.C. Gen. Stat. § 58-3-225.'" (ECF No. 20 at 13–14.) Plaintiff goes on to reason that "[i]nasmuch as the Supreme Court . . . has held that contracts are subject to enforcement under ERISA, it follows that the interest factor created by law and incorporated into the Agreement by Defendant is enforceable either as a contract right under ERISA or as a State claim under this Court's supplemental jurisdiction." (ECF No. 20 at 13–14 (citations omitted).) It is not clear whether Plaintiff is: (1) asserting that the Provider Agreement incorporates the NCPPA's 18% interest provision, which would appear to support a claim of breach of contract; or (2) whether Plaintiff is claiming that the ERISA plans contain a provision allowing for 18% interest. Upon review of the Provider Agreement, there is no express language incorporating the NCPPA's 18% interest provision. Further, there are no allegations in the Complaint or in the record that support Plaintiff's assertion that the ERISA plans themselves incorporate NCPPA's 18% provision. However, because the Court is granting Plaintiff leave to properly assert its breach of contract claim under ERISA, the Court will allow Defendant's motion to dismiss without prejudice. Plaintiff thus has leave to amend to clarify and/or to properly plead the basis for these alternative arguments raised in its briefing.

16

Taking the Complaint and the Provider Agreement in the most light favorable to Plaintiff, the third claim must be dismissed for failure to state a claim. As Defendant points out, the Provider Agreement states that BCBSNC "agree[s] to provide a mechanism that allows [Plaintiff] to verify Member eligibility before rendering services, based on current information held by [Defendant]. (ECF No. 16-1, § 3.2.3.) This provision does not obligate Defendant to provide any notification to its insureds, and Plaintiff has failed to point to any provision in the Provider Agreement that would support its third claim. *See Tasz, Inc. v. Indus. Thermo Polymers, Ltd.*, 80 F. Supp. 3d 671, 682 (W.D.N.C. 2015) ("A basic element of a claim for breach of contract is a showing that the party accused has failed to fulfill an obligation owed."); *Pearsall v. Select Portfolio Servicing, Inc.*, NO. 7:15-CV-106-FL, 2015 WL 9223076, at *3 (E.D.N.C. Dec. 17, 2015) (dismissing breach of contract claim because there was no obligation imposed on defendant under the contract).

Because Plaintiff has failed to allege a basis in the Provider Agreement for imposing an obligation on Defendant to provide notification to its members as to whether they are entitled to payment for drug addiction services rendered by Plaintiff, Plaintiff's third claim must be dismissed for failure to state a claim.

### D. (Count V) Mandatory Injunction

In its fifth claim, Plaintiff alleges that it is entitled to an "Order from the Court requiring Defendant to make such payments to Plaintiff as are within the limits of Defendant's liability for insurance to its insureds, as will permit Plaintiff to meet its financial obligations for the continued provision of treatment to Defendant's insureds for drug addiction." (ECF No. 8 at 3.) Defendant seeks dismissal, contending, among other things, that a mandatory

injunction is not a proper cause of action and therefore should be dismissed. (ECF No. 16 at 18.) Again, the Court agrees with Defendant.

It is well settled that a request for injunctive relief is not a cause of action but rather a type of remedy. *See Eli Research, Inc. v. United Commc'ns Grp., LLC*, 312 F. Supp. 2d 748, 764 (M.D.N.C. 2004); *Fare Deals, Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678, 682 n.1 (D. Md. 2001) ("[A] request for injunctive relief does not constitute an independent cause of action; rather, the injunction is merely the remedy sought for the legal wrongs alleged . . . ."). Accordingly, the Court dismisses the fifth claim to the extent it is pled as a cause of action.

## IV. CONCLUSION

Plaintiff's first cause of action for breach of contract is completely preempted by ERISA to the extent it involves ERISA governed health care plans and must be treated as a federal claim arising under § 502(a). While the Fourth Circuit has held that a completely preempted claim should not be dismissed, the Court may grant Plaintiff leave to properly file the claim under ERISA to clarify the scope of the relief requested.[11] The Court finds that granting leave is proper in this case so that Plaintiff can properly file its claims consistent with this opinion and clarify any claim brought under § 502. The Complaint's second and fourth causes of action *arising* under the North Carolina Prompt Pay Act are dismissed because the

---

[11] *See Singh*, 335 F.3d at 292. Further, some district courts in this Circuit have dismissed completely preempted claims without prejudice, instructing the plaintiff to amend the complaint by properly pleading the claim under ERISA. *See Rollins*, 109 F. Supp. 3d at 881; *accord Van Lier v. Unisys Corp.*, 142 F. Supp. 3d 477, 487 & n.9 (E.D. Va. 2015).

18

statute does not confer a private right of action. The Court also dismisses Plaintiff's third and fifth claims for failure to state a claim.

For the reasons outlined herein, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss (ECF No. 15) is GRANTED IN PART and DENIED IN PART. To the extent that Plaintiff's first cause of action is completely preempted by ERISA, and thus transformed into a federal claim, Defendant's motion to dismiss Plaintiff's claim for breach of contract is DENIED. As to all other claims, Defendant's Motion to Dismiss is GRANTED, and these claims are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff is granted leave to amend the Complaint consistent with this Court's Opinion.

IT IS FURTHER ORDERED that Plaintiff's Motion for Preliminary Injunction (ECF No. 11) is DENIED AS MOOT.

This, the 9th day of February, 2017.

                                        /s/ Loretta C. Biggs
                                    United States District Judge