IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BOBBY P. KEARNEY, MD, PLLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV191 |
| | ) | |
| BLUE CROSS AND BLUE SHIELD | ) | |
| OF NORTH CAROLINA, an | ) | |
| Independent Licensee of the Blue | ) | |
| Cross Blue Shield Association, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff, Bobby P. Kearney, MD, PLLC, brings this action against Blue Cross and Blue Shield of North Carolina ("Blue Cross NC" or "BCBSNC") seeking payment for services under Section 502(a) of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a), including pre- and post-judgment interest and attorney's fees. (ECF No. 50.) Before the Court is Blue Cross NC's Motion to Dismiss Plaintiff's Second Amended Complaint, (ECF No. 51). For the reasons set forth below, the motion will be granted.

**I.     BACKGROUND**

Plaintiff is a medical practice located in Iredell County, North Carolina, "devoted solely and exclusively" to treating patients with substance abuse and drug addiction issues. (ECF No. 50 ¶¶ 1, 13.) BCBSNC "is an administrator of health benefit plans for its insureds or members." (ECF No. 52 at 3; *see* ECF No. 50 ¶¶ 2, 14.) Plaintiff and BCBSNC entered into

a Network Participation Agreement ("Provider Agreement"), effective May 8, 2011, under which Plaintiff "agree[d] to render Medically Necessary Covered Services" to BCBSNC Members[1] in exchange for "payment in full for Covered Services delivered to Members during the term of th[e] Agreement." (ECF No. 50 at 17, 20 § 2.1.1; *id.* at 26 § 4.1; *id.* at 38.) Until July 2015, BCBSNC "made all payments directly to Plaintiff for the medical services provided to BCBS[NC] insureds," and Plaintiff "experienced no problem with the payment of its claims submitted to Defendant for those services." (ECF No. 50 ¶¶ 17d, 17e, 21.)

On July 22, 2015, BCBSNC notified Plaintiff by letter that, "effective immediately," BCBSNC would institute a pre-payment review of certain claims for urine tests administered by Plaintiff to BCBSNC Members. (*Id.* ¶¶ 23, 24.) BCBSNC further informed Plaintiff that, "[g]oing forward," Plaintiff would be required to "submit all medical record documentation" to support the billing of claims for urine tests, including "the test results along with the specific rationale for performing these tests." (*Id.* ¶ 26.) Upon receiving BCBSNC's July 22, 2015 letter, Plaintiff complied with the new billing submission requirements while attempting, to no avail, to discuss the matter with BCBSNC in order to understand "the reason or reasons that [BCBSNC] was investigating [Plaintiff, and] why the protocol for presenting claims had changed." (*Id.* ¶¶ 29, 31–33.) BCBSNC subsequently terminated Plaintiff as a provider for BCBSNC on June 2, 2016. (*Id.* ¶ 38.)

---

[1] Under the Provider Agreement, "'Member' . . . means an individual designated by [BCBSNC] who is eligible for coverage and/or benefits and is properly enrolled in a Benefit Plan." (ECF No. 50 at 19 ¶ 1.17.) The Provider Agreement further defines "Benefit Plan" as "the particular set of health benefits and services provided as set forth in an applicable evidence of coverage, that is issued to an individual or to a Group and that describes the terms, conditions, limitations, exclusions, benefits, rights and obligations relating to the Member's health benefits and services." (*Id.* at 18 ¶ 1.4.)

In February 2016, Plaintiff filed this action in state court, alleging that BCBSNC failed to pay Plaintiff for certain "medically necessary" services provided to BCBSNC insureds. (ECF No. 6.) On March 10, 2016, BCBSNC removed the action to this Court, contending that federal question jurisdiction was present because "one or more of Plaintiff's claims are completely preempted by [ERISA]." (ECF No. 1 ¶ 8.) On April 11, 2016, BCBSNC moved to dismiss all claims in Plaintiff's Complaint under Rule 12(b)(6) ("First Motion to Dismiss"). (ECF No. 15.) On February 9, 2017, this Court entered a Memorandum Opinion and Order which, in pertinent part, granted in part and denied in part BCBSNC's First Motion to Dismiss, and further, granted leave for Plaintiff to amend its Complaint "so that Plaintiff can properly file its claims consistent with this opinion and clarify any claim brought under § 502." *Bobby P. Kearney, MD, PLLC v. Blue Shield of N.C.*, 233 F. Supp. 3d 496, 508–09 (M.D.N.C. 2017). In its Memorandum Opinion and Order, this Court concluded that "Plaintiff's first cause of action for breach of contract is completely preempted by ERISA to the extent it involves ERISA governed health care plans and must be treated as a federal claim arising under § 502(a)." *Id.* at 508.

On February 22, 2017, Plaintiff filed an Amended Complaint, (ECF No. 27), which BCBSNC moved to dismiss, (ECF No. 29). Plaintiff then simultaneously filed a motion seeking leave to file a Second Amended Complaint as well as a motion to remand this action to state court. (ECF Nos. 34, 36.) On March 23, 2018, this Court entered an Order denying Plaintiff's motion to remand; granting leave for Plaintiff to file a Second Amended Complaint; and denying as moot, without prejudice, BCBSNC's motion to dismiss. (ECF No. 43 at 9–

3

10.) BCBSNC now moves to dismiss Plaintiff's Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 51.)

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "challenges the legal sufficiency of a complaint," including whether the complaint meets the pleading standard of Rule 8(a)(2). *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), thereby "giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). While a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* at 555 (alteration in original). Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* In other words, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible when the complaint alleges facts that suffice to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 709 (4th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). A complaint may fail to state a claim upon which relief can be granted in two ways: first, by failing to state a valid legal cause of action, *i.e.*, a cognizable claim, *see Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012); or

4

second, by failing to allege sufficient facts to support a legal cause of action, *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

Generally, on a Rule 12(b)(6) motion to dismiss, a court cannot consider documents beyond the complaint without converting the motion into a motion for summary judgment. *See Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (citing Fed. R. Civ. P. 12(d)). The court can, however, properly consider "documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted). The Court will therefore consider the Provider Agreement attached to the Second Amended Complaint. (*See* ECF No. 50 at 17–51.) In addition, the Complaint alleges that the Provider Agreement authorized Plaintiff "to provide certain medical services to persons . . . eligible for health insurance coverage *under one or more benefit plans* provided by [BCBSNC] to its 'member[s].'" (ECF No. 50 ¶ 17 (emphasis added).) Accordingly, the Court will also consider the health benefit plan documents attached to Defendant's memorandum of law in support of its motion to dismiss,[2] the authenticity of which has not been challenged by any party.

## III. DISCUSSION

Defendant moves for Rule 12(b)(6) dismissal of Plaintiff's Complaint on the following four grounds: (i) "Plaintiff lacks statutory standing to bring a claim under ERISA"[3];

---

[2] (ECF Nos. 52-1 to 52-21; ECF Nos. 53, 53-1 to 53-23.)

[3] According to the Fourth Circuit, "typically, '[a] dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim.'" *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011) (alteration in original) (quoting *Baldwin v. Univ. of Pittsburgh Med. Ctr.,* 636 F.3d 69, 73 (3d Cir. 2011) (internal quotation marks omitted)).

5

(ii) "Plaintiff fails to state an ERISA claim for wrongful denial of plan benefits"; (iii) "Plaintiff has not shown that each alleged ERISA beneficiary exhausted all administrative remedies for each claim for which Plaintiff seeks benefits before filing suit"; and (iv) because Plaintiff's claims for interest and attorney's fees "depend entirely on the ERISA claim which must be dismissed," Plaintiff's claim for interest and attorney's fees must likewise be dismissed. (ECF No. 52 at 2–3.)

As an initial matter, Plaintiff argues that its claims "hinge[ ] solely upon the Provider Agreement" and that "[t]his case has nothing to do with efforts by Plaintiff to recover payment for medically necessary services from any of the health insurance plans alluded to in Defendant's Motion to Dismiss." (ECF No. 54 at 3, 5.) According to Plaintiff, BCBSNC's assertions that "Plaintiff has filed [this] civil action to recover under ERISA" is erroneous, and "[n]othing could be further from the truth, as appears on the face of the pleadings." (*Id.* at 2–3.)

However, Plaintiff specifically alleges the following on the face of its Second Amended Complaint:

> (i) that "[t]his Court has jurisdiction to consider Plaintiff's claims pursuant to the authority granted in 29 U.S.C. § 1331, et seq., particularly 29 U.S.C. § 1332, ERISA § 502," (ECF No. 50 ¶ 5); and
>
> (ii) "ERISA § 502(a)(1)(B) grants to Plaintiff the right to bring this action to recover sums due [Plaintiff] for medically necessary services provided . . . to Defendant's insureds," (*id.* ¶ 8).

Plaintiff also pleads its first claim in the Second Amended Complaint as: "Payment for medically necessary services under ERISA § 502(a)(1)(B)." (*Id.* at 14.) The Court continues

6

to be perplexed, (*see* ECF No. 43 at 4–5), by Plaintiff's repeated contention that this action does not involve ERISA and, instead, arises out of a breach of contract claim, despite having elected to amend its Complaint *twice* to include an ERISA claim, (*see* ECF Nos. 27, 50). Thus, as this Court stated in its Memorandum Opinion and Order entered February 9, 2017, "Plaintiff's breach of contract claim is really one for benefits under [ERISA] § 502(a)." (ECF No. 26 at 9.) Accordingly, the Court will now address BCBSNC's first argument that "Plaintiff lacks statutory standing to bring a claim under ERISA," (ECF No. 52 at 2, 7–12.)

Defendant first argues that Plaintiff's ERISA claim should be dismissed "because Plaintiff does not have direct or derivative standing . . . to bring an ERISA claim." (ECF No. 52 at 12.) Specifically, Defendant contends that "Plaintiff does not have direct statutory standing to bring an ERISA action because he is not a fiduciary, beneficiary, or a plan participant." (*Id.* at 7.) Defendant further contends that Plaintiff lacks derivative standing because "[u]nder the plain language of the Blue Cross NC health benefit plans, Blue Cross NC members are contractually prohibited from assigning benefits to any third party, and any purported assignment has no legal effect." (*Id.* at 11–12.) Plaintiff argues that "[s]tanding to enforce a claim under ERISA is a non-issue, because it is abundantly clear from the pleadings and the facts here that Plaintiff's claim against Defendant arises from a 'Provider Agreement' between Plaintiff and Defendant and not between Plaintiff and an ERISA plan which has defined benefits for an insured." (ECF No. 54 at 5.)

"Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access

to the Federal courts.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (alteration in original) (quoting 29 U.S.C. § 1001(b)). The United States Supreme Court explained that "[t]he purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Id.* ERISA therefore seeks to "induc[e] employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred." *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002). As a result, "[s]tanding under ERISA is fairly narrow," with "[b]oth the Supreme Court and most other circuits . . . limit[ing] federal jurisdiction in ERISA actions to those entities specified in the statute."[4] *Yarde v. Pan Am. Life Ins.*, 67 F.3d 298, 1995 WL 539736, at *3 (4th Cir. Sept. 12, 1995) (unpublished table decision). Only plan participants,[5] beneficiaries,[6] fiduciaries, and the Secretary of Labor are granted a private cause of action under ERISA. 29 U.S.C. § 1132(a). *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27 (1983) ("ERISA carefully enumerates the parties entitled to seek relief

---

[4] Under ERISA's civil enforcement provision, "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

[5] Under ERISA, the term "participant" is defined as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7).

[6] Under ERISA, the term "beneficiary" is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

under § 502; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action.").

Plaintiff is a healthcare provider. (*See* ECF No. 50 ¶ 1.) "Healthcare providers . . . are generally not 'participants' or 'beneficiaries' under ERISA and thus lack independent standing to sue under ERISA." *Gables Ins. Recovery, Inc. v. Blue Cross & Blue Shield of Fla., Inc.*, 813 F.3d 1333, 1338 (11th Cir. 2015) (citation omitted). The Court therefore concludes that because Plaintiff is a healthcare provider, it lacks direct statutory standing to sue under ERISA.

With respect to derivative standing, however, most courts, including district courts in this circuit,[7] recognize that a provider may acquire derivative standing to sue under ERISA if the provider secures a written assignment from a "participant" or "beneficiary" of that individual's right to payment of medical benefits. *Gables Ins. Recovery, Inc.*, 813 F.3d at 1339. *See also Brown v. Sikora & Assocs., Inc.*, 311 F. App'x 568, 570 (4th Cir. 2008) (noting that, "[a]lthough we have never addressed the question of derivative standing for ERISA benefits, our sister circuits have consistently recognized such standing when based on the valid assignment of ERISA health and welfare benefits by participants and beneficiaries" and that "extending derivative standing to health care providers serves to further the explicit purpose of ERISA").

---

[7] *See, e.g., Med. Univ. Hosp. Auth./Med. Ctr. of the Med. Univ. of S.C. v. Oceana Resorts, LLC*, Civ. No. 2:11-cv-1522, 2012 WL 683938, at *3 (D.S.C. Mar. 2, 2012); *Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc.*, 723 F. Supp. 2d 814, 819 (D. Md. 2010); *Fresenius Med. Care Holdings, Inc. v. Brooks Food Grp., Inc.*, Civ. A. No. 3:07CV14-H, 2007 WL 2480251, at *4 (W.D.N.C. Aug. 28, 2007); *Nat'l Ctrs. for Facial Paralysis, Inc. v. Wal-Mart Claims Admin. Grp. Health Plan*, 247 F. Supp. 2d 755, 758–59 (D. Md. 2003). *See also Peninsula Reg'l Med. Ctr. v. Mid-Atl. Med. Servs., LLC*, 327 F. Supp. 2d 572, 576 (D. Md. 2004) (recognizing that without a specific assignment of rights, a third-party provider lacks standing to sue under ERISA).

9

Here, Plaintiff's Second Amended Complaint alleges that Plaintiff obtained a written assignment of benefits from its BCBSNC insured patients which reads as follows:

> ASSIGNMENT OF INSURANCE BENEFITS
> I hereby irrevocably assign and transfer to Addiction Recovery Medical Services (hereafter referred to as ARMS), and or Bobby P. Kearney, MD, all rights, title and interest in the benefits payable for services rendered by ARMS or Bobby P. Kearney, MD, provided in any insurance policy(ies) under which I am insured. Said irrevocable assignment and transfer shall be for the purpose of granting ARMS or Bobby P. Kearney, MD, an independent right of recovery on said policy(ies) of insurance but shall not be construed to be an obligation of ARMS or Bobby P. Kearney, MD, to pursue any such right of recovery. This assignment and transfer shall not take away my standing to make claim or sue for benefits individually should coverage be denied by any insurance company(ies).
>
> I hereby authorize all insurance company(ies) under which I am insured to pay directly to ARMS or Bobby P.[ ] Kearney, MD, all benefits due under said policy(ies) by reason of services rendered therein.

(ECF No. 50 ¶ 17b.) Accepting this allegation as true, if valid, such an assignment could confer upon Plaintiff derivative standing to sue under ERISA. *See Gables Ins. Recovery, Inc.*, 813 F.3d at 1339; *Brown*, 311 F. App'x at 570. Defendants contend, however, that Plaintiff has "fail[ed] to establish derivative standing to bring an ERISA claim because all of the relevant and applicable Blue Cross NC health benefit plans expressly prohibit such assignments, precluding derivative standing." (ECF No. 52 at 8–9.)

"ERISA plans are contractual documents." *Johnson v. Am. United Life Ins. Co.*, 716 F.3d 813, 819 (4th Cir. 2013) (quoting *Haley v. Paul Revere Life Ins. Co.*, 77 F.3d 84, 88 (4th Cir. 1996)). Claims for ERISA plan benefits under ERISA § 502(a)(1)(B) are therefore contractual in nature. While ERISA plans are regulated by statute, in interpreting ERISA plans, the Court

applies established principles of contract law. *Id.* at 819–20. The Fourth Circuit has not expressly addressed the issue of anti-assignment provisions in ERISA plans, however, a number of other circuit courts have held that anti-assignment clauses in benefit plan documents are enforceable. *See, e.g., Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 455 (3d Cir. 2018) (finding that "anti-assignment clauses in ERISA-governed health insurance plans are generally enforceable"); *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.,* 371 F.3d 1291, 1296 (11th Cir. 2004) ("Because ERISA-governed plans are contracts, the parties are free to bargain for certain provisions in the plan—like assignability. Thus, an unambiguous anti-assignment provision in an ERISA-governed welfare benefit plan is valid and enforceable."); *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.,* 298 F.3d 348, 352 (5th Cir. 2002) (upholding validity of anti-assignment clause); *City of Hope Nat'l Med. Ctr. v. HealthPlus, Inc.,* 156 F.3d 223, 229 (1st Cir. 1998) (same); *St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kan., Inc.,* 49 F.3d 1460, 1464-65 (10th Cir. 1995) (same); *Davidowitz v. Delta Dental Plan of Cal., Inc.,* 946 F.2d 1476, 1481 (9th Cir. 1991) (concluding that "ERISA welfare [benefits] are not assignable in the face of an express non-assignment clause in the plan"). With these principles in mind, the Court now turns to the specific language of the BCBSNC health benefit plans.

Under the heading "Benefits to which MEMBERS are Entitled," the BCBSNC benefit plans provide the following:

> The benefits described in this benefit booklet are provided only for MEMBERS.[8] These benefits and the right to receive payment

---

[8] The benefit plan defines "MEMBER" as "[a]n EMPLOYEE or DEPENDENT, who is currently enrolled in the PLAN and for whom premium is paid." (*E.g.*, ECF No. 52-1 at 77.)

11

> under this health benefit plan cannot be transferred or assigned to any other person or entity, including PROVIDERS.[9] Under the PLAN, BCBSNC may pay a PROVIDER directly. . . . However, any PROVIDER'S right to be paid directly is through such contract with BCBSNC, and not through the PLAN. Under the PLAN, BCBSNC has the sole right to determine whether payment for services is made to the PROVIDER[.] . . . BCBSNC's decision to pay a PROVIDER directly in no way reflects or creates any rights of the PROVIDER under the PLAN, including but not limited to benefits, payments or procedures.

(*E.g.*, ECF No. 52-1 at 64.) When interpreting an ERISA health insurance plan, the Court will "enforce the terms of an ERISA insurance plan according to 'the plan's plain language in its ordinary sense.'" *Johnson*, 716 F.3d at 819–20 (quoting *Wheeler v. Dynamic Eng'g, Inc.*, 62 F.3d 634, 638 (4th Cir. 1995)); *see also United McGill Corp. v. Stinnett,* 154 F.3d 168, 172 (4th Cir. 1998) (stating that "the plain language of an ERISA plan must be enforced in accordance with its literal and natural meaning." (internal quotation marks omitted)). Here, the BCBSNC health benefit plan explicitly states that its "benefits and the right to receive payment under this health benefit plan *cannot be transferred or assigned* to any other person or entity, including PROVIDERS." (ECF No. 52-1 at 64 (emphasis added).) The health benefit plan further states that "BCBSNC's decision to pay a PROVIDER directly in no way reflects or creates any rights of the PROVIDER under the PLAN, including but not limited to benefits, payments or procedures." (*Id.*) In light of the clear, unambiguous language of the BCBSNC health benefit plan, the Court concludes that the parties have specifically contracted against the assignment of

---

[9] The benefit plan defines "PROVIDER" as "[a] HOSPITAL, NONHOSPITAL FACILITY, DOCTOR, or OTHER PROVIDER, accredited, licensed or certified where required in the state of practice, performing within the scope of license or certification. All services performed must be within the scope of license or certification to be eligible for reimbursement." (*E.g.*, ECF No. 52-1 at 79.)

benefits, and Plaintiff therefore lacks derivative standing to sue for recovery of benefits under ERISA.

In its response, Plaintiff cites two cases in support of its standing argument. (ECF No. 54 at 6–7.) The first case cited by Plaintiff is *Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296 (11th Cir. 2010). Indeed, as Plaintiff argues, (*see* ECF No. 54 at 6), in that case, the Eleventh Circuit referred to its finding in a prior, related case that previously-submitted claim forms "authoriz[ing] benefit payments to go to the [healthcare providers] on the beneficiary's behalf . . . 'suffice to show an assignment of benefits' by the [providers'] patients," *Borrero*, 610 F.3d at 1302 (quoting *Conn. State Dental Assoc. v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1351 (2d Cir. 2009)). However, as BCBSNC correctly points out, (ECF No. 55 at 6), in *Borrero*, there was no anti-assignment clause, thus the Eleventh Circuit did *not* consider, and made no finding about, the effect of an anti-assignment clause in an ERISA benefit plan.

In contrast, in the second case cited by Plaintiff—*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282 (9th Cir. 2014)—the Ninth Circuit specifically addressed the effect of an anti-assignment clause in an ERISA benefit plan. *Spinedex*, 770 F.3d at 1296. In so doing, the Ninth Circuit, upheld the district court's holding that "an anti-assignment provision in [an ERISA benefit plan] prevented [the healthcare provider's] patients from assigning claims under that Plan." *Id.* According to the Ninth Circuit, "[a]nti-assignment clauses in ERISA plans are valid and enforceable." *Id.* This case, therefore, supports this Court's conclusion that the anti-assignment provision in BCBSNC's health benefit plans precludes a finding that Plaintiff has derivative standing to sue under ERISA.

Having concluded that Plaintiff lacks direct or derivative statutory standing to bring this ERISA action, the Court will grant BCBSNC's motion to dismiss the Second Amended Complaint.[10]

For the reasons outlined herein, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that Blue Cross NC's Motion to Dismiss Plaintiff's Second Amended Complaint, (ECF No. 51), is GRANTED, and Plaintiff's claims against Defendant are hereby DISMISSED WITH PREJUDICE.

A Judgment dismissing this action will be entered contemporaneously with this Order.

This, the 26th day of March, 2019.

/s/ Loretta C. Biggs
United States District Judge

---

[10] Because the Court concludes that Plaintiff has neither direct nor derivative standing to sue under ERISA, it need not evaluate Defendant's remaining arguments in support of its motion to dismiss. *See Griffin v. Coca-Cola Enters., Inc.*, 686 F. App'x 820, 821–22 (11th Cir. 2017) ("[A]n unambiguous anti-assignment provision in an ERISA-governed welfare benefit plan is valid and enforceable, and will operate to void the assignment. If there is such an unambiguous anti-assignment provision, the healthcare provider will lack derivative standing and cannot maintain the ERISA action." (internal citation omitted)), *cert denied*, 138 S. Ct. 237 (2017); *Avu-Tox, LLC v. Cigna Health & Life Ins. Co.*, No. 5:17-CV-250-BO, 2017 WL 6062257, at *4 (E.D.N.C. Dec. 7, 2017) (finding that "plaintiff has failed to allege that it has received a valid assignment of benefits under ERISA, and plaintiff's ERISA claims are thus properly dismissed for lack of statutory standing"); *Total Renal Care of N.C., L.L.C. v. Fresh Market, Inc.*, No. 1:05CV00819, 2008 WL 623494, at *8 (M.D.N.C. Mar. 6, 2008) (stating that a finding of "an unambiguous anti-assignment clause" in the ERISA plan documents at issue "would be cause for awarding summary judgment in favor of [the defendants] on the issue of standing and thus, dismissal of [the plaintiff's] ERISA-based claims because such a clause would mean that [the plaintiff] lacked derivative standing").